## Case No. 16,371.

### UNITED STATES v. The STADACONA.

[28 Leg. Int. 333; [1] 14 Int. Rev. Rec. 147; .4 Am. Law T. Rep. U. S. Cts. 213; 1 Leg. Gaz. Rep. 282; 8 Phila. 155; 3 Leg. Gaz. 317; 6 Am. Law Rev. 386.]

Circuit Court. E. D. Pennsylvania.    Oct. 2, 1871.

SHIPPING—CONCEALMENT OF GOODS—ACT OF MARCH 2, 1799.

Goods were brought on board a foreign vessel and concealed by the steward. Held, that the master was not liable under the act of March 2, 1799, for not entering them on the manifest.

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

In admiralty.

Aubrey H. Smith, for United States.

Henry R. Edmunds and Henry Flanders, for respondents.

McKENNAN, Circuit Judge. By the twenty-third section of the act of congress of March 2, 1799 (1 Stat. 644), all masters of vessels, owned in whole or in part in the United States, carrying goods from a foreign port into the United States, are required to have a manifest or manifests of their cargo; and, by the twenty-fourth section of the same act, a forfeiture equal to the value of the goods not included in the manifests, is imposed, "and all such merchandise, not included in the manifest, belonging or con-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reprinted from 28 Leg. Int. 333, by permission.]

signed to the master, mate, officers or crew of such ship or vessel, shall be forfeited." These provisions are applied also to foreign vessels by the twenty-fifth section of the act of July 18, 1866 [14 Stat. 184], and, by the eighth section, the vessel may be holden for the penalty thus imposed.

The object of these laws is to protect the public revenue. Hence it is required of the chief officer of the vessel, that he shall keep a manifest of his whole cargo in the form prescribed, to facilitate and assure the collection of the duties imposed upon it; and the observance of this requirement is enforced by a penalty. It is the act or neglect of the master for which the penalty is imposed; for while the goods not on the manifest, belonging or consigned to any of the officers or crew, are forfeited, the master alone is condemned to the payment of a sum in money equal to the value of such goods. The personal forfeiture is the prescribed punishment of his personal delinquency. The unexplained finding of goods on board, not embraced in the manifest, is sufficient primary evidence of his liability to the penalty, but, by the express enactment of the proviso to the twenty-fourth section above referred to, this may be averted by proof, that no part of the cargo had been unshipped, except as reported by the master, and that the manifest had been lost or mislaid, without fraud or collusion, or that they were defaced by accident or incorrect by mistake.

The motive of the omission is thus made the ultimate test of culpability. It is, therefore, a superficial, as well as harsh, interpretation, which applies to the proofs of the master's faultlessness a standard of literal conformity to the mode of exculpation, which the act indicates, but does not prescribe exclusively, as effectual. If the apparent offence is expurgated, the spirit and object of the law are effectually subserved. An omission then to perform the duty imposed upon the master, which proof of an honest mistake or an unavoidable accident will excuse, will be condemned also by proof, which, in like manner, relieves him from all suspicion of corrupt or conscious wrong.

The respondent here is the master of the ship Stadacona, of Londonderry, Ireland. The night before she sailed from her home port, while the officers of the vessel were on shore, the steward carried on board nineteen bundles of silk, and concealed them in a space between the bread locker and the stairs leading from the cabin to the upper deck. This space was boarded up and covered with tin. In reference to it, the master, in his deposition, says: "This place had never been opened to my knowledge. I never imagined it could be opened, and never paid any attention to it." When the vessel was searched by the custom house officers at Philadelphia, this place was discovered and broken open, and the silks were found secreted therein.

There is no contention as to this state of facts, or as to the fair inference from them, that the shipment and concealment of the goods were the act of the steward alone, without the participation or knowledge of the master. It is not to be gainsayed, under such circumstances, that the master could not make an entry of the concealed goods on the manifest, and that his inability to make it did not result from any fault of his. No personal delinquency is imputable to him. While the smuggled goods then were properly condemned and forfeited, they are not to be treated as any part of the cargo, within the meaning of the act of congress, for the non-entry of which upon the manifest a penalty is imposed upon the master. He cannot be subjected to a personal forfeiture, when he has not done, or omitted to do, anything inconsistent with an honest purpose to discharge his duty. The district court rightly so adjudged, and its decree is affirmed.